IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT A. HARDY, | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : No. 09-1230 |
| MARIO FERNANDEZ and R&L CARRIERS SHARED SERVICES, LLC, d/b/a R&L CARRIERS, | : |
| Defendants. | : |

FILED

AUG 1 7 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                   AUGUST 17, 2009

Presently before this Court is a Motion to Dismiss Pursuant to *Forum non Conveniens* filed by Defendants Mario Fernandez ("Fernandez") and R&L Carriers Shared Services, LLC d/b/a R&L Carriers ("R&L Carriers") (collectively, the "Defendants"). For the following reasons, Defendants' Motion will be granted.

I.  **FACTS**

On March 18, 2008, Plaintiff Scott A. Hardy ("Hardy") was involved in a motor vehicle accident in Clayton County, Georgia.[1] Hardy alleges that Fernandez, while in the scope of his employment as a driver for R&L Carriers, collided with Hardy while Hardy was operating a motorcycle. Hardy further alleges that as a result of the collision, he was required to have most of his left leg amputated. At the time of the accident, both Hardy and Fernandez were residents

---

[1] Clayton County is located in the Northern District of Georgia. See Map of Districts and Counties in Georgia, http://www.gasd.uscourts.gov/pdf/ga_county.pdf (last visited Aug. 7, 2009).

of Georgia. Following the accident, Hardy treated with physicians in Atlanta, Georgia, before relocating to Pennsylvania to be with his family and friends who currently assist him with his injuries.

On August 25, 2008, Hardy filed a civil action against Defendants in the Court of Common Pleas of Philadelphia County. The Complaint alleged, *inter alia*, that Fernandez was driving in excess of the speed limit and failed to stop at a red light. On October 28, 2008, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to 42 Pa.C.S.A. § 5322(e). Defendants' Motion sought dismissal of the Complaint under the doctrine of *forum non conveniens*, arguing that Georgia was a more appropriate forum because it was the state where the accident occurred and where the majority of the relevant witnesses and evidence were located. Defendants allege that this Motion to Dismiss was never decided because, on November 14, 2008, Hardy filed a Praecipe to Discontinue the Action without prejudice.

In January 2009, Hardy moved to Oxford, Pennsylvania. On March 20, 2009, Hardy filed the instant action in this Court. On April 9, 2009, Defendants filed an Answer to Hardy's Complaint. On July 9, 2009, Defendants filed the instant Motion to Dismiss for *Forum non Conveniens*, arguing that Georgia is the appropriate forum for this case. On August 3, 2009, Hardy filed a Response to Defendants' Motion, arguing that the instant action was properly filed in this Court. On August 10, 2009, Defendants filed a Reply to Hardy's Response.

## II.   DISCUSSION

"[T]he district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, and [e]ach case turns on its facts." Windt v. Qwest Communs. Int'l, Inc., 529 F.3d 183, 188 (3d Cir. 2008) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 529

(1988) (internal quotations and citations omitted)); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981) ("The *forum non conveniens* determination is committed to the sound discretion of the trial court."). When a plaintiff brings an action in a court having jurisdiction, "a plaintiff's choice of forum should rarely be disturbed." Piper, 454 U.S. at 241. A court may exercise its discretion to dismiss a case only when trial of the action would "'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to a plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Id. (quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). Defendants bear the burden of establishing that litigation in the plaintiff's chosen forum would be oppressive and vexatious to them. See id.

In deciding this Motion, the Court must first determine whether an adequate alternative forum exists to hear the case. See Lony v. E. I. Du Pont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989) (quoting Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988)). If such a forum exists, the Court must then determine the amount of deference to be given to the plaintiff's choice of forum. Id. Finally, in making a determination of oppressiveness and vexation, the Supreme Court requires a balancing of private interest factors which affect the convenience of the parties, and public interest factors which affect the convenience of the forum. See Windt, 529 F.3d at 189 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)). The private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Id. (quoting Gilbert, 330 U.S. at 508 (internal quotations omitted)). The public interest factors include:

> administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case"; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (quoting Gilbert, 330 U.S. at 508-09). "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds." Windt, 529 F.3d at 190.

### A.     The Availability of an Alternative Forum

The Supreme Court has noted that this requirement is generally satisfied where the defendant is "'amenable to process' in the other jurisdiction." Piper, 454 U.S. at 254 n.22 (citing Gilbert, 330 U.S. at 506-07). However, where the alternative forum cannot provide an adequate remedy, dismissal on *forum non conveniens* grounds is improper. Id. at 254. Here, an alternative forum is available in the Northern District of Georgia, the District which governs the situs of the accident. All parties are clearly "amenable to process" in that District, and we are confident that the court in that District can provide Hardy with an adequate remedy.

### B.     Amount of Deference Due Plaintiff's Choice of Forum

A court is generally required to give a plaintiff's choice of forum significant deference. Piper, 454 U.S. at 255. However, "where the operative facts giving rise to the action occur outside of the forum selected by the plaintiff, the deference given to plaintiff's choice of forum is

somewhat reduced." Colantonio v. Hilton Int'l Co., No. 03-1833, 2004 U.S. Dist. LEXIS 15991, at *9-*10 (E.D. Pa. Aug. 13, 2004) (citing Cameli v. WNEP-16 The News Station, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001)). Because the operative facts giving rise to the instant action occurred outside of the Eastern District of Pennsylvania, this Court will reduce the amount of deference afforded to Hardy's choice of forum as we apply the private and public interest factors.

C. **Private and Public Interest Factors**

The Court finds the following factors to be relevant to the instant Motion: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling witnesses; 3) the cost of obtaining attendance of willing witnesses; 4) the possibility of view of premises; 5) the administrative difficulties flowing from court congestion; 6) the local interest in having localized controversies decided at home; 7) the interest in having the trial in a forum that is at home with the governing state law; and 8) the unfairness of burdening citizens in an unrelated forum with jury duty. Additionally, although it is not an enumerated factor in the relevant case law, this Court will consider Hardy's medical condition in determining the amount of deference to be afforded to Hardy's choice of forum.

1. **Relative Ease of Access to Sources of Proof**

The sources of proof as to the events giving rise to this incident are all located in Georgia. These sources include Fernandez, the accident scene, the investigating police officers, the emergency medical personnel and the majority of other healthcare providers who have treated Hardy. As such, this factor weighs heavily in favor of the Defendants.

2. **Availability of Compulsory Process for Attendance of Unwilling Witnesses**

Hardy argues that "Defendants have not contested that the Court has jurisdiction of R&L

5

or that the witnesses involved in this case are subject to compulsory process by the Court." (Pl.'s Resp. to Defs.' Mot. at 3.) However, Federal Rule of Civil Procedure 45(b)(2) states that "a subpoena may be served at any place . . . outside [the district of the issuing court] but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection." Fed. R. Civ. P. 45(b)(2); see also Tannenbaum v. Brink, 119 F. Supp. 2d 505, 512 (E.D. Pa. 2000) (explaining that if witnesses who are "spread out across the United States, Europe and the Caribbean . . . . were unwilling to appear, a Pennsylvania court could not compel them to do so"). Therefore, we disagree with Hardy that the witnesses involved in this case are subject to compulsory process by this Court, and find that this factor weighs in favor of the Defendants.

### 3. Cost of Obtaining Attendance of Willing Witnesses

The majority of witnesses in this matter reside in Georgia. A court's consideration of witnesses' convenience depends on the number of critical witnesses and the relative weight of testimony on the issues of liability and damage. Schmidt v. Leader Dogs for Blind, Inc., 544 F. Supp. 42, 48 (E.D. Pa. 1982). "Even where 'the overwhelming number of plaintiff's possible witnesses include medical professionals who treated plaintiff subsequent to the accident,' the case may be transferred because damage testimony would become relevant only if plaintiffs were to succeed on liability." Id. (quoting Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 476 F. Supp. 381, 384 (E.D. Pa. 1979)). In short, "the convenience of liability witnesses is of greater significance." Colantonio, 2004 U.S. Dist. LEXIS 15991, at *20. Here, it appears that all of the liability witnesses, with the exception of Hardy, reside in Georgia. Thus, the overall cost of obtaining the attendance of witnesses will very likely be much greater if this matter is litigated in the Eastern District of Pennsylvania, rather than in the

Northern District of Georgia. As such, this factor weighs in favor of the Defendants.

### 4. Possibility of View of Premises

Hardy points out that "Defendants do not argue that it would be necessary to take a view of the scene of the accident, since pictures of the scene have been exchanged." (Pl.'s Resp. to Defs.' Mot. at 3.) While this may be true, the Court cannot say for certain that none of the parties will desire to view the intersection of the accident at some point in the future. Therefore, we find that this factor slightly favors the Defendants.

### 5. Administrative Difficulties Flowing from Court Congestion

Defendants argue that "[t]he anticipated administrative requirements for this action would burden an already-crowded docket in this District." Defendants then discuss a number of statistics set out in the 2008 Judicial Caseload Profile and state, *inter alia*, that "there were 1,786 civil actions per judgeship" in this District in 2008, while in the United States District Court for the Northern District of Georgia, there were only 480 actions per judgeship in the same year. (Defs.' Mot. at 10-11, Exs. H, J.) While this Court has no reason to believe that Hardy's case would present greater administrative difficulties than any other case, the foregoing statistics do show that the Northern District of Georgia is less congested than the Eastern District of Pennsylvania. As such, this factor weighs in favor of the Defendants.

### 6. Local Interest in Having Localized Controversies Decided at Home

This controversy is not "local" to the Commonwealth of Pennsylvania. The sole connection this matter has to Pennsylvania derives from Hardy's decision to move to Pennsylvania after the accident. This controversy arose in Georgia, the state where the accident occurred and where the vast majority of witnesses are located. Clearly, Georgia has an interest in

7

having controversies of this type decided in Georgia. Thus, this factor weighs heavily in favor of the Defendants.

### 7. Interest in Having the Trial in a Forum at Home with the Governing State Law

As previously discussed, this action arises out of an accident that occurred in Georgia between two then Georgia residents. Georgia law will determine whether the Defendants are ultimately liable in this matter, as well as Hardy's comparative fault, if any, in operating his motorcycle. As such, there is an interest in this case in having the trial in a forum that is at home with the governing state law. Therefore, this factor weighs in favor of the Defendants.

### 8. Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

The court in Colantonio held that imposing jury duty on citizens of the Eastern District of Pennsylvania for an accident that occurred outside the Eastern District was unwarranted. Colantonio, 2004 U.S. Dist. LEXIS 15991, at *32-*33. As in Colantonio, we find that imposing jury service on citizens of this District is also unwarranted in this case. As previously discussed, all events giving rise to Hardy's claim occurred in Georgia. The accident was investigated by Georgia police and witnessed by Georgia residents. Furthermore, Hardy received treatment in Georgia following the accident. "Thus, imposing jury duty on citizens who have little to no relation to this case makes this factor weigh in favor of the Defendant's position." Id.

### 9. Hardy's Medical Condition

While the Court is aware that Hardy's medical condition may make traveling to Georgia more difficult than it otherwise would be, the Court is not convinced that a trial in Georgia would continue long enough to pose any real risk to Hardy's health. Furthermore, Hardy has not alleged that his friends or family will not assist him in traveling to Georgia, or that medical facilities in

8

the Northern District of Georgia are in any way inadequate for treatment of his skin grafts. Thus, in consideration of the foregoing factors and the facts of this case, this Court finds that litigating in the Eastern District of Pennsylvania would establish oppressiveness and vexation to the Defendants which is more than sufficient to outweigh the inconvenience to Hardy.

An appropriate Order follows.